**UNITED STATES DISTRICT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 17-cv-62462-CMA**

GREGORY HASKIN CHIROPRACTIC
CLINICS, INC., a Florida corporation; and
COASTAL WELLNESS CENTERS, INC.,
a Florida corporation, on behalf of themselves
and all others similarly situated,

       Plaintiffs,

v.

GEICO INDEMNITY COMPANY;
GEICO GENERAL INSURANCE COMPANY;
GEICO CASUALTY COMPANY; and
GOVERNMENT EMPLOYEES INSURANCE
COMPANY,

       Defendants.

_____/

**CLASS REPRESENTATION**

**PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES**
**AND EXPENSES, CLASS REPRESENTATIVE INCENTIVE AWARDS,**
**AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Rule 23(e) and (h) of the Federal Rules of Civil Procedure and the Court's

Order Granting Preliminary Approval of Class Action Settlement [ECF NO. 67] ("Preliminary

Approval Order"), Plaintiffs, GREGORY HASKIN CHIROPRACTIC CLINICS, INC., and

COASTAL WELLNESS CENTERS, INC., ("Plaintiffs" or "Class Representatives") file their

Unopposed Motion for an Award of Attorneys' Fees and Expenses, and Class Representatives'

Incentive Awards (the "Motion"). Plaintiffs move this Court for entry of an Order which (i) awards

Class Counsel attorneys' fees in the amount of $2,503,116.20, which represents approximately

26.7% of the estimated minimum value of the monetary Settlement Benefits, (ii) grants

reimbursement of litigation expenses in the amount of $28,883.74; and (c) Incentive Award

payments of $6,000 for the Plaintiffs.  In support hereof, Plaintiffs respectfully submit the following:

## I.     RELEVANT FACTS AND PROCEDURAL HISTORY

### A.  The Settlement Resolves Two Related Class Actions[1]

In this Action, Plaintiffs claim that the GEICO Companies, throughout the Class period commencing December 14, 2012, that the GEICO Companies engaged in an improper uniform business practice of failing to properly apply the deductible authorized under Florida Statute Section 627.739(2) when calculating the amount of personal injury protection benefits due to Plaintiffs and all Class members, in violation of the Defendants' insurance policies and the Florida Motor Vehicle No-Fault. *See* Amended Complaint, ¶ 15 [ECF No. 60].  The GEICO Companies vigorously denied these allegations, and asserted various defenses including lack of standing, defective assignment of benefits, exhaustion of benefits, set-off, and individual Settlement Class Members' failure to comply with the pre-suit demand requirements set forth in Florida Statute Section 627.736. *See generally,* Answer and Affirmative Defenses to Amended Class Action Complaint [ECF No. 61].  The statutes of limitations for claims from 2012 through 2014 have expired, *see* Florida Statutes Section § 95.11(2)(b), and, therefore, the new opportunity for Settlement Class Members to file claims for those years is a significant benefit.

This Action was originally filed on December 14, 2017 in the case styled *Gregory Haskin Chiropractic Clinics, Inc. v. GEICO Indemnity Co.,* Case No. 17-cv-62462-CMA-BSS (the "Haskin Chiropractic Case").  After the original class action against GEICO General Insurance

---

[1]The Parties were also involved in the litigation of an additional similar action styled *Coastal Wellness Centers, Inc. a/a/o Marlene Williams; Plantation Spinal Care Center, Inc., a/a/o Mary Ann Balbo; and Tower Health Center, Inc., a/a/o Julie David v. GEICO General Ins. Co.,* Case No. 17-cv-61963, related to Plantation Spinal Care Center, Inc.'s claims involving the application of the PIP deductible.  After extensive briefing on both Defendant's Motion to Dismiss, and Motion for Judgment on the Pleadings, the Court dismissed with prejudice Plantation Spinal Care Center, Inc.'s claims involving the application of the PIP deductible on July 20, 2018.

Company, *see* fn. 1, *supra*, was dismissed with prejudice, a second class action alleging the same claims was filed on December 28, 2018, styled *Coastal Wellness Centers, Inc. a/a/o Manuel St. Pierre v. GEICO General Ins. Co*., Case No. 18-cv-63168 (the "Coastal Wellness Case").  On July 29, 2019, the Amended Class Action Complaint was filed in the Haskin Chiropractic Case, which added a breach of contract claim, and added Plaintiff, Coastal Wellness Centers, Inc., and two additional Defendants – GEICO Casualty Company and GEICO General Insurance Company (the "Amended Complaint").  The Amended Complaint in the Haskin Chiropractic Case also added the claims and the Parties involved in the Coastal Wellness Case.  Accordingly, Plaintiff, Coastal Wellness Centers, Inc., dismissed the Coastal Wellness Case pursuant to a Joint Stipulation on August 6, 2019.  The addition of two more Defendants provided a significant benefit to the Settlement Class as all claims against the four (4) GEICO entities, some of which were barred by the applicable statute of limitations, would be resolved by the Settlement.

The Parties conducted discovery, which included, *inter alia*, exchange of informal discovery, review and analysis of documents produced by the GEICO Companies and others, and the retention of qualified consultants and experts who analyzed the information and claimed damages. *See generally*, the concurrently filed Declaration of Tod Aronovitz ("Aronovitz Decl.").

<u>Procedural History</u>

On December 14, 2017, Plaintiff, Gregory Haskin Chiropractic Clinics, Inc., filed a Class Action Complaint seeking monetary damages and equitable relief against GEICO Indemnity Company, asserting that GEICO Indemnity Company underpaid Personal Injury Protection ("PIP") benefits for medical services by allegedly failing to properly apply the PIP deductible as authorized under Florida Statutes Section 627.739(2).  This case was styled *Gregory Haskin Chiropractic Clinics, Inc. v. GEICO Indemnity Co*., Case No. 17-cv-62462-CMA-BSS (the "Haskin Chiropractic Case").  On January 31, 2018, GEICO Indemnity Company filed a

Motion to Dismiss the Complaint in the Haskin Chiropractic Case.  Plaintiff, Gregory Haskin Chiropractic Clinics, Inc., filed its Notice of Voluntary Dismissal of Count III that brought a breach of contract claim for unpaid PIP benefits on February 20, 2018.  GEICO Indemnity Company thereafter withdrew its pending Motion to Dismiss and filed its Answer and Affirmative Defenses on March 14, 2018.

A similar class action alleging the same claims against GEICO General Insurance Company was filed on December 20, 2017, by Plantation Spinal Care Center, Inc., seeking monetary damages and equitable relief in connection with the application of the PIP deductible. Plantation Spinal Care Center, Inc.'s claims involving the application of the PIP deductible were added through a Second Amended Complaint in a case pending since October 5, 2017 styled *Coastal Wellness Centers, Inc. a/a/o Marlene Williams; Plantation Spinal Care Center, Inc., a/a/o Mary Ann Balbo; and Tower Health Center, Inc., a/a/o Julie David v. GEICO General Ins. Co.,* Case No. 17-cv-61963 (the "Plantation Spinal Case").  GEICO General Insurance Company moved to dismiss the Plantation Spinal Case on January 12, 2018.  The parties thereafter conferred and filed their Joint Scheduling Report on February 16, 2018.  Plaintiffs also filed on February 16, 2018 their Response in Opposition to Defendant's Motion to Dismiss, and Defendant filed its Reply in Support of its Motion to Dismiss on March 12, 2018.  The Court entered its Order denying Defendant's Motion to Dismiss on April 3, 2018, and Defendant filed its Answer and Affirmative Defenses on April 23, 2018.  On April 25, 2018, the Court entered its Order Setting Trial Date, and Discovery Deadlines, Referring Case to Mediation, and Referring Discovery Motion to United States Magistrate Judge. The parties filed their Notice of Selection of Mediator on April 25, 2018. Subsequently, after extensive briefing on Defendant's Motion for Judgment on the Pleadings, the Court entered its Order granting Defendant's Motion and dismissed with prejudice Plantation Spinal Care Center, Inc.'s claims involving the application of the PIP deductible on July 20, 2018.

On December 28, 2018, Plaintiff, Coastal Wellness Centers, Inc., filed a Class Action Complaint seeking monetary damages and equitable relief against GEICO General Insurance Company in connection with its application of the PIP deductible in processing PIP claims. This case was styled *Coastal Wellness Centers, Inc. a/a/o Manuel St. Pierre v. GEICO General Ins. Co.*, Case No. 18-cv-63168 (the "Coastal Wellness Case"). GEICO General filed its Answer and Affirmative Defenses on March 4, 2019.

On April 12, 2018, the Court entered a stay jointly requested by the Parties in the Haskin Chiropractic Case pending the Florida Supreme Court decision in *Progressive Select Insurance Company v. Florida Hospital Medical Center a/a/o Jonathan Parent*, Florida Supreme Court Case No. SC18-278. A decision was issued in the *Florida Hospital Medical Center* case in December 2018. *See Progressive Select Ins. Co. v. Fla. Hosp. Med. Ctr.,* 260 So. 3d 219 (Fla. 2018). The Court, on January 9, 2019, ordered the Parties in the Haskin Chiropractic Case to mediation. As detailed below, this mediation culminated in an agreement on principle terms of the preliminarily approved Class Settlement as set forth in the Parties' Joint Status Report to the Court on July 13, 2019. On July 29, 2019, the Amended Class Action Complaint was filed in the Haskin Chiropractic Case, which added a breach of contract claim, and added Plaintiff, Coastal Wellness Centers, Inc., and two additional Defendants – GEICO Casualty Company and GEICO General Insurance Company (the "Amended Complaint"). The Amended Complaint in the Haskin Chiropractic Case also added the claims and the Parties involved in the Coastal Wellness Case. Accordingly, Plaintiff, Coastal Wellness Centers, Inc., dismissed the Coastal Wellness Case pursuant to a Joint Stipulation on August 6, 2019. The Amended Complaint asserts three proposed class claims: Count I – Declaratory Judgment; Count II – Injunctive Relief; and Count III – Breach of Contract (Unpaid PIP Benefits). The GEICO Companies filed their Answer and Affirmative Defenses to the Amended Complaint on August 12, 2019.

The Parties conducted substantial confirmatory discovery. Plaintiffs conducted a detailed investigation of the applicable facts, the Parties exchanged information and documentation, and conducted an intensive deposition of the GEICO Companies' Corporate Representative pursuant to Federal Rule of Civil Procedure 30(b)(6). Plaintiffs analyzed the documents produced by the GEICO Companies and consulted with experts to assist them in understanding the claims, the processing of claims, and the potential damages at issue. Aronovitz Decl. ¶¶ 12, 16, 21, 30.

### B. Settlement Negotiations

The Settlement is the result of two in person mediations and extensive negotiations over the course of many months both before and after the mediations. The Parties commenced settlement discussions in earnest following the Court's Order denying the Motion to Re-Open Case [ECF No. 46], in the Haskin Chiropractic Case. After preliminary pre-mediation discussions, on February 14, 2019, the Parties attended a full-day mediation with experienced neutral Mediator, Rodney A. Max at Upchurch Watson White & Max Mediation Group *Id.* ¶ 14. Prior to the mediation, Plaintiffs prepared and submitted an in-depth mediation report detailing the facts, merits of the claims, potential damages, and class certification issues. *Id*. Though the Parties were able to make some progress at this first mediation, they agreed to continue discussions and negotiations and, subsequently, hold a second day of mediation. *Id.* ¶ 15. The Parties filed their Joint Status Report on February 25, 2019 [ECF No. 51], and their Joint Notice of Filing Mediation Report on March 5, 2019 [ECF No. 52] regarding the outcome of the mediation. The Parties filed a second Joint Status Report on April 8, 2019, [ECF No. 55], advising the Court of the progress of their settlement negotiations. Throughout the four (4) months following the first mediation, the Parties continued to engage in extensive additional discussions, hard-fought negotiations that resulted in a draft settlement term sheet. Aronovitz Decl ¶ 14. The Parties filed another Joint Status

Report on June 10, 2019, [ECF No. 56], advising the Court of the continued progress of their negotiations.

The Parties completed a second full-day mediation session with Mediator Max on July 9, 2019, wherein they reached an agreement on all substantive terms of a statewide class settlement in both the Haskin Chiropractic Case and the Coastal Wellness Case that encompassed the proposed class members in both cases, along with claims involving two additional GEICO entities. On July 13, 2019, the Parties filed their Joint Status Report, [ECF No. 57], informing the Court that an agreement on the principle terms of a proposed class settlement had been reached and seeking a scheduling order to allow the Parties to conduct confirmatory discovery, consolidation with the Coastal Wellness Case, submission of a Consolidated Amended Complaint (including the addition of additional GEICO entities); and submission of a settlement agreement and related filings to seek preliminary approval of the proposed class settlement under Federal Rule of Civil Procedure 23.

The Court entered an Order on July 16, 2019, allowing the Parties ninety (90) days to finalize and submit their settlement agreement. [ECF No. 58]. Thereafter, the Parties filed their Joint Stipulation and Consent to file an Amended Complaint to add an additional plaintiff, three (3) additional defendants, and a breach of contract claim. [ECF No. 59]. Plaintiffs filed their Amended Class Action Complaint with exhibits on July 29, 2019 [ECF No. 60, and Defendants filed their Answer and Affirmative Defenses on August 6, 2019 [ECF No. 61].

During the next three (3) months, the Parties engaged in both formal and informal confirmatory discovery regarding the claims and defenses at issue, including the exchange of documents and an extensive deposition of the GEICO Companies' Corporate Representative pursuant to Federal Rule of Civil Procedure 30(b)(6). The Plaintiffs conducted discovery for the Class Period beginning December 14, 2012 as to the GEICO Companies' policies and procedures

related to the processing and adjusting of PIP claims, including the participation of third-party vendors; the scope and method of the GEICO Companies' application of the PIP deductible; the software program used by the GEICO Companies to review, adjust, and process PIP claims for policies that have a PIP deductible; the potential number of healthcare providers who submitted PIP claims under policies with PIP deductibles; and the potential number of PIP claims adjusted and paid by the GEICO Companies under insurance policies with PIP deductibles. This discovery was required for Plaintiffs and Class Counsel to understand and confirm the strengths and weaknesses of the case, and the potential damages at issue. Aronovitz Decl. ⁋ 16.

As a result of their continued investigation and discovery efforts and the disruption caused by Hurricane Dorian, the Plaintiffs sought an extension of twenty (20) days to complete the required discovery and finalize the settlement agreement and related filings. [ECF No. 62].  The Court granted the extension on September 6, 2019, allowing the Parties until November 4, 2019 to submit their settlement agreement to the Court. [ECF No. 63]. During this period the Parties engaged in extensive and detailed negotiations regarding every aspect of the Settlement Agreement and its exhibits. Aronovitz Decl. ¶ 18.  Although the Parties had reached an agreement in principle, many of the details of the Settlement remained unresolved or in dispute. Over a span of months, the Parties worked diligently and expended a substantial amount of time in an effort to finalize the terms of the Settlement Agreement and ancillary documents and the plan for the Notice Program. *Id.*  ¶¶ 18, 30.   These negotiations were complex, and involved detailed lengthy repeated discussions regarding virtually every provision of the Settlement Agreement and its many exhibits, including, the structure of the Settlement itself, the Class Notice, the Claims process, among a myriad of other issues.  Class Counsel expended substantial efforts to negotiate a structure and terms and draft language satisfactory to all Parties. *Id.*  Moreover, the Parties conducted detailed negotiations regarding the language of the Class Notice and the Claim Form and the methodology

of the Notice Program. *Id.* Thus, the Settlement was reached by the Parties' litigation efforts, extensive fact discovery and arms-length negotiations.

The Parties continued to work on the Settlement Agreement and on October 31, 2019 filed a Joint Motion for Extension of Time seeking a one (1) week extension to finalize and submit to the Court the Parties settlement documents and motion for preliminary approval of settlement. [ECF No. 64]. On November 1, 2019, the Court granted the motion requiring the Parties to file the settlement documents by November 12, 2019. [ECF No. 65]. On November 12, 2019, the Parties filed their Joint Motion for Preliminary Approval of Class Action Settlement, [ECF No. 66], along with the fully executed Settlement Agreement, and exhibits including the proposed Class Notice, Claim Form, proposed Order Certifying Settlement Class and Preliminary Approval of Class Action Settlement, and proposed Final Order and Judgment Approving Class Action Settlement and Dismissing Class Action Claims with Prejudice. [ECF No. 66-1]. This Court entered its Order Preliminarily Approving Class Action Settlement and Notice of Fairness Hearing on May 15, 2020, at 9:00 a.m.[2] ("Order of Preliminary Approval") [ECF No. 67.]

## II.    THE PROPOSED SETTLEMENT AND ITS VALUE

The details of the proposed Settlement are set forth in the Settlement Agreement preliminarily approved by Court [ECF No. 66-1], and in the Parties Joint Motion for Final Approval of Class Action Settlement, filed concurrently herewith [ECF No. 87]. Concisely, the Settlement provides both significant monetary and equitable relief to Settlement Class Members including (i) payment of 100% of the difference between what they were previously paid and the amount they should have been paid, a 10% enhancement, plus 10% interest, and an additional $5 for each Valid Claim Form; (ii) for the GEICO Companies on a going forward basis to adjust and

---

[2] As a result of the COVID-19 pandemic and pursuant to the Parties request, the Final Fairness Hearing has been rescheduled to June 26, 2020 at 11:00 A.M. *See* Order [ECF No. 84].

pay claims where a PIP deductible applies by applying the deductible based upon the full billed charges; (iii) for the GEICO Companies' payment of all Notice Program and Settlement Administration expenses which included Class Action Fairness Act ("CAFA") notification materials required by CAFA, 28 U.S.C. § 1715 via certified mail return receipt requested through the U.S.P.S. to the U.S. Attorney General, and applicable state Attorneys General and Insurance Commissioners; Direct Mail Notice including the Claim Form via U.S.P.S. First Class mailings to all 19,421 Class Members and subsequent claims administration expenses, (iv) for the GEICO Companies' payment of attorneys' fees and expenses of up to $2,532,000 as approved by the Court, and (v) for the GEICO Companies' payment of Incentive Award payments of up to $6,000 for each Class Representative as approved by the Court.

It is important to note that while there is no cap for the amount a Settlement Class Member may be paid on each claim, based upon Plaintiffs' investigation and review of PIP individual lawsuits and settlements, the estimated average amount of each claim is $410. Not including additional claims that may be accepted as Valid Settlement Claims following notification of deficiencies in connection with attempted submissions that were timely submitted, or the costs of the Notice Program and Administration, the estimated value of the Settlement is $9,370,960.[3]

---

[3]The value of the Settlement, however, is likely higher because this valuation does not account for the monetary value of thousands of potential claims that were timely submitted but, after notification of deficiencies, have yet to be cured. Moreover, as set forth above, this estimated valuation also does not account for the great value of the equitable relief of the Settlement requiring the GEICO Companies application of the deductible to the full billed charges.  Nor does it take into the value of the Notice Program and Settlement Administration encompassing the certified mailing of the CAFA Notice to the U.S. Attorney General and the Attorneys General and Insurance Commissioners of all 50 states, Direct Mail Notice to almost 20,000 Settlement Class Members, the creation and maintenance of the Settlement Website, and the remaining claims review, processing, and payment distribution.  Thus, the minimum value of this substantial Settlement is likely well over $10,000,000.

III.   **THE COURT SHOULD APPROVE CLASS COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES.**

In the Eleventh Circuit, "it is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained." *Flaum v. Doctor's Assocs.*, No. 16-61198-CIV, 2019 U.S. Dist. LEXIS 40626, at *11-12  (S.D. Fla. Mar. 11, 2019) (Altonaga, J.); *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015) (Rosenberg, J.) (citing *Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) (*Camden I*); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358 (S.D. Fla. 2011); *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).

In *Camden 1*, the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this Circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Gavaerts*, 2015 U.S. Dist LEXIS 150354, at *27 (S.D. Fla. Nov. 5, 2015) (J. Rosenberg), quoting *Camden I,* 946 F.2d at 774.  The Eleventh Circuit has applied this percentage-based approach to "claims-made settlements," noting that a "claims-made settlement is ... the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant." *Poertner v. Gillette Co.* 618 Fed. Appx. 624, 628 n. 2 (11th Cir. 2015); *see also Carter v. Forjas Taurus S.A.*, 2016 U.S. Dist LEXIS 96054, at *444 (S.D. Fla. 2016) (citing *Poertner*), *aff'd Carter v. Forjas*, 701 Fed. Appx. 759 (11th Cir. 2017); *Marty v. Anheuser-Busch Cos., LLC*, 2015 U.S. Dist. LEXIS 144290, at *5, fn. 3 (S.D. Fla. Oct. 22, 2015) (citing *Poertner*). Common-fund settlements need not specify a maximum value, artificially limiting the class recovery. Common funds may be unlimited, where a defendant agrees to pay all valid claims with no cap on the potential recovery. The Eleventh Circuit has confirmed

that class counsel's fee award should be based on the value of "any non-monetary benefits conferred upon the class by the settlement," such as injunctive relief, as well as "the economics involved in prosecuting a class action." *Oakes v. Blue Cross & Blue Shield of Fla., Inc.*, 2016 U.S. Dist. LEXIS 147252, at *16 (S.D. Fla. Oct. 21, 2016) (in class action involving expansion of health care coverage to class members, Court found aggregated, estimated cost to class members of $126,000,000 for treatment covered through settlement constituted "total available benefit" for purposes of common-fund analysis). *See also David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362, at *14 (S.D. Fla. 2010) (in action involving motorcycle defect, court treated uncapped, claims-made settlement as constructive common fund, and found settlement with ascertainable benefits involving value of credit toward purchase of new motorcycle or parts, and extended warranty, may be treated as common fund to which a percentage fee may be awarded).

### A. The Requested Fee Amount Is Reasonable as a Percentage of the Total Benefits Obtained by the Settlement.

District courts in the Eleventh Circuit are afforded substantial discretion in formulating fee awards. Waters v. Intern. Precious Metals Corp., 190 F. 3d 1291, 1293 (11th Cir. 1999); *Gavaerts,* 2015 U.S. Dist. LEXIS 150354 at *28. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *In re Sunbeam Litig.,* 176 F. Supp. 2d at 1333 (quoting *Camden I,* 946 F.2d at 774). As a general rule "[t]he majority of common fund fee awards fall between 20% to 30% of the fund," although "an upper limit of 50% of the fund may be stated as a general rule," The reasonableness of a fee request is subject to an individualized determination, and district court are to consider the twelve factors laid out in *Johnson v. Georgia Highway Express, Inc.*, 488 F, 2d 714, 717-19 (5th Cir. 1974) when determining what amount is reasonable. 354. *See Camden I,* 946 F.2d at 772, n. 3. "The percentage applies to the total benefits provided, even where the actual payments to the class following a claims process is lower." *Hall v. Bank of*

*Am., N.A.*, No. 12-22700, 2014 U.S. Dist. LEXIS 177155, at *28-29 (S.D. Fla. Dec. 17, 2014) ("Attorneys representing a class action are entitled to an attorney's fee based upon the total benefits obtained in or provided by a class settlement, regardless of the amounts eventually collected by the Class") (citing *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295 (11th Cir. 1999)); *Marty LLC*, 2015 U.S. Dist. LEXIS 144290, at *5 (using "percentage-of-the-fund approach to evaluate the appropriateness of attorneys' fees in a claims made class action settlement"). In this case, the value of the benefit that Class Counsel obtained for the Class is at least $9,370,960. The attorneys' fees requested ($2,503,116.26) represents 26.7% of the minimum value of the Settlement's monetary common benefit to the Settlement Class. *Camden I*, 946 F.2d at 774-875; *see also Poertner*, 618 Fed.Appx. at 628. Further, Class Counsel's fee, incentive awards, litigation costs, and notice and administration costs, are separate from, and do not reduce the value of, the Settlement Benefits to the Settlement Class.   Moreover, the Defendants do not oppose Class Counsel's request for fees and costs, and after being notified in the Class Notice of Class Counsel's request for fees and costs, not a single Settlement Class Member has objected.

The reasonable fee request of 26.7% of the total minimum monetary benefits available to the Class is well within Eleventh Circuit precedent and is an appropriate fee award when considering both a percentage of the total benefits available to the Class, and pursuant to the various *Johnson* factors (discussed in detail below) that district courts of the Eleventh Circuit consider in confirming reasonableness. *See Camden I*, 946 F.2d at 774-775.

### B.  The *Johnson* Factors Confirm the Reasonableness of the Requested Fee

The fee requested in this action is within the benchmark of 20% to 30% and is amply supported by the factors courts consider when evaluating the reasonableness of a fee award. In *Camden* 1, the Eleventh Circuit instructed courts to further evaluate common fund awards based on reasonableness factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-

19 (5th Cir. 1974) (the "*Johnson* factors"), which include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations  imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases. *Camden* 1, 946 F.2d at 772, n.3.

### 1. The Time and Labor Required, Preclusion from Other Employment and the Time Limits Imposed Justify the Fee Amount

The first, fourth and seventh *Johnson* factors – the time and labor, preclusion of other employment, and time limitations imposed – each heavily support the reasonableness of Class Counsel's fee request. As described above, from initiating this action until reaching the proposed Settlement, Class Counsel were continuously engaged in the litigation against well-funded Defendants represented by sophisticated counsel.  Prosecuting and settling this Action demanded considerable time and labor. This substantial work has included investigating the claims at issue, motion practice, engaging in extensive fact discovery, the intensive deposition of the GEICO Companies' corporate representative, attending multiple mediations, and engaging in several months of arm's-length negotiations between experienced class counsel.  Further, Plaintiffs consulted and retained knowledgeable and qualified experts who performed critical analyses regarding PIP claims processing, investigation into software programs, third-party servicers, and potential damages to help formulate and substantiate the claims in this case in preparation for class certification, dispositive motions, and, ultimately, for trial.

Additional attorney time will continue to be devoted to this case following the filing of this Motion, including for supervising aspects of the administration of the Settlement, answering Settlement Class Member questions, and helping resolve any issues that arise. In sum, Class Counsel and their support staff have devoted, and will continue to devote, substantial time and resources to this matter that would otherwise have been spent on other cases.

Class Counsel collectively devoted more than 1,923.42 hours to the prosecution of this case. Accordingly, the amount of time and labor devoted to this case weighs in favor of finding Class Counsel's requested fee award reasonable. *See Yates v. Mobile Cnty. Pers. Bd*., 719 F.2d 1530, 1535 (11th Cir. 1983) ("The expenditure of 1,000 billable hours – and often in significant blocks of time – necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work, and this factor should raise the amount of the award."); *see also Stalcup v. Schlage Lock Co.*, 505 F. Supp.2d 704, 708 (D. Colo. 2007) (noting that "the *Johnson* court concluded that priority work that delays a lawyer's other work is entitled to a premium.").

### 2. The Case Involved Difficult Issues, and the Risk of Nonpayment in this Contingent Litigation, and Not Prevailing on the Claims Was High

The second, sixth and tenth *Johnson* factors – the novelty and difficulty of the questions, the contingent nature of the case, and the undesirability of the case – also support the requested fee award. This case involved novel issues that presented a significant risk of nonpayment. As mentioned above, in the Plantation Spinal Case, the court denied GEICO General Insurance Company's motion to dismiss, but later granted its Motion for Judgment on the Pleadings. Plaintiffs faced issues regarding the PIP Statute's pre-suit demand requirements, and the GEICO Companies' procedures of processing individual PIP claims. Given these considerable open issues, including uncertainty about prevailing on class certification, the Settlement represents an outstanding result.

The difficult and contingent nature of this case further demonstrates its undesirability.

There are few lawyers willing to invest significant time and resources prosecuting a lawsuit that involves complicated and uncertain legal questions and a substantial risk of receiving no compensation, which is evidenced by the fact that, to Class Counsel's knowledge, no other related class actions have been certified.  Although Class Counsel managed to achieve an excellent result for the Settlement Class, this outcome was anything but certain until shortly before the Settlement was reached. As such, the "undesirability" of this case is a factor that weighs in favor of the reasonableness of the requested fee award. *See In re Checking Account Overdraft Litig*, 830 F. Supp. 2d at 1364 ("'Undesirability' and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight.") (citing *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.* 540 F.2d 102, 112 (3d Cir. 1976)).

Such a substantial risk of nonpayment in return for advancing all of the costs and fees weighs heavily in favor of finding Class Counsel's requested award reasonable. *See Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) ("A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high."); *In re Checking Acc't Overdraft Litig.*, 830 F. Supp. 2d at 1364 ("A contingency fee arrangement often justifies an increase in the award of attorney's fees."); *Francisco v. Numismatic Guar. Corp.*, No. 06-61677, 2007 U.S. Dist. LEXIS 96618 at *35 (S.D. Fla. Jan. 30, 2007) ("Attorneys' risk is perhaps the foremost factor in determining an appropriate fee award.").

Class Counsel received no compensation during the course of this litigation and have incurred significant unpaid fees and costs. While courts in the Eleventh Circuit have rejected the

lodestar method for calculating fees, even as a "cross check" on the reasonableness of a percentage fee,[4] Class Counsel nonetheless provides this information to the Court to show the high risk of the contingent nature of this litigation and the risk of non-payment of these fees.

Class Counsel's fee of $2,503,116.26 represents an approximate 2.155 multiplier of their lodestar of $1,161,312.50, which is reasonable and well within the average range of lodestar multipliers in the Eleventh Circuit. *See also Oakes*, 2016 U.S. Dist LEXIS 147252, at *17, citing *Pinto*, 513 F. Supp. 2d 1334 (noting lodestar multiples "in large and complicated class actions" range from 2.26 to 4.5, while "three appears to be average" and "most lodestar multiples awarded in cases like this are between 3 and 4"). These unpaid fees and costs were fully at risk and would have remained unpaid had the GEICO Companies prevailed.

### 3. Class Counsel Achieved an Excellent Result for the Settlement Class

The eighth *Johnson* factor focuses on the results achieved for the Class. This is a major factor in assessing the reasonableness of a requested fee award. *E.g. Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("critical factor is the degree of success obtained"); *Pinto*, 513 F. Supp. 2d at 1342 ("The result achieved is a major factor to consider in making a fee award."); *Behrens*, 118 F.R.D. at 547-48 ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."). The result achieved here is exemplary because the Settlement actually provides more than the amount that the Actions were filed to obtain - the full payment owed to the Settlement Class Members for the medical services provided to the GEICO Companies' insureds - plus a 10% enhancement of the amounts due, plus 10% interest, and an additional $5 for every Valid Claim Form.

---

[4] Courts in this Circuit have not only rejected the lodestar method (hours times rate) for calculating class counsel fees, but even as a so-called "cross-check" on the reasonableness of a percentage fee. *In re Checking Account Overdraft Litig*., 830 F. Supp. 2d at 1362 (citing, inter alia, Alba Conte, ATTORNEY FEE AWARDS § 2.7, at 91 n. 41 ("the lodestar approach should not be imposed through the back door via a 'cross-check.'")).

When considering the result achieved courts consider the value of *both* monetary and injunctive relief. *See Poertner,* 618 Fed.Appx. at 628; *Perez,* 501 F. Supp. 2d 1360; *Oakes,* 2016 U.S. Dist. LEXIS at * 15 (finding award should be based on consideration of "any non-monetary benefits conferred upon the class by the settlement," such as injunctive relief, as well as "the economics involved in prosecuting a class action.") (citing *Poertner*). Here, the Settlement delivers at least $9,370,960 in monetary value for the claims of Settlement Class Members. However, the Settlement also provides equitable relief by addressing the proper method of the application of the PIP deductible.  The Settlement and Final Judgment provide that the GEICO Companies' must adjust and pay claims where a PIP deductible applies by applying the deductible to the full billed charges.  This is significant because the GEICO Companies' voluntary cessation of its' previous procedure of applying the deductible to PIP claims is insufficient. *See Greenwood Utilities Com'n v. Hodel*, 764 F. 2d 1459, 1462 (11th Cir. 1985); and *Secretary of Labor v. Burger King Corp.*, 955 F. 2d 681 (11th Cir. 1992).  In *Burger King*, the Department of Labor brought suit against Burger King for violations of child labor laws. 955 F. 2d at 682. After suit was brought, Burger King submitted evidence that it had implemented a "new policy" that forbade the hiring of fourteen- and fifteen-year olds, including affidavits of its senior vice president/general counsel, and senior vice president for human relations; computerized daily records from the two-week period of September 12, 1990 through September 25, 1990, each of which stated '# of 14/15 year olds: 0'; and excerpts from depositions of four DOL Compliance officers. *Id.* at 683. The Eleventh Circuit found that even this substantial evidence was insufficient "[c]onsidering the five-year history of violations" and that the evidence could not "be considered the clear proof of abandonment of illegal activity necessary to render DOL's lawsuit moot." *Id.* at 684.  Here, the proposed Final Judgment mandates the GEICO Companies adhere to the proper application of the deductible and provides that this application of the deductible will be deemed correct pursuant to

the terms of the GEICO Companies' PIP insurance policies. Thus, the equitable relief provided by the Settlement is an outstanding result that supports Class

Counsel's fee request.

### C.  The Requested Fee Amount is Consistent with the Market Rate in Similar Class Cases and Is Separate from the Funds Made Available to the Class.

The fifth and twelfth *Johnson* factors – the customary fee, and awards in similar cases – also support approval. These factors weigh in favor of awarding Class Counsel the requested fee, which is within the average range of the percentage of the value of the benefits obtained by the Settlement. Class Counsel did not receive any compensation over the course of this litigation and have incurred a $1,161,312.50 lodestar and $28,883.74 in costs. Aronovitz Decl. ¶ 28.  These unpaid costs and fees for the time expended in this Action, would have remained unpaid if the GEICO Companies prevailed. This risk existed from the moment Class Counsel began their investigation, and there was no promise that Class Counsel would ever receive compensation for their efforts. A fee amounting to 26.7% of the estimated minimum monetary value of Settlement Benefits obtained for the Settlement Class is well within the market rate for class action fee awards in the Eleventh Circuit. *See Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. Appx. 429 (11th Cir. 2012) (upholding fee award of 25% of common fund in claims-made settlement in which defendant agreed to send claimants free baby formula up to a certain aggregate value). A separately paid attorneys' fee that amounts to less than 30% of the value of benefits obtained for the Class is consistent with this Circuit's benchmark for fees in common fund class actions, including claims-made settlements.

Further, the requested fee in this action is consistent with numerous other decisions from this Circuit that use the percentage-of-the-fund approach to evaluate the appropriateness of attorneys' fees in a claims-made class action settlement like this one. The Eleventh Circuit has confirmed that class counsel fee awards should be based on the consideration of "any nonmonetary

benefits conferred upon the class by the settlement," such as injunctive relief, as well as "the economics involved in prosecuting a class action." *Poertner*, 618 Fed. Appx. at 628-629 (Eleventh Circuit found district court correctly concluded that injunctive relief was "part of the settlement pie"); *Carter*, 2017 WL 2813844, at *5 (holding that fee award was "a reasonable percentage of the settlement value" when considering the value of an "enhanced warranty, which is itself a significant tangible benefit"); *Faught v. American Home Shield Corp.,* 668 F.3d 1233, 1243--44 (11th Cir. 2012) (affirming fee award of $1,500,000 that was paid separately from the settlement fund and was not based on a specific dollar value awarded to class members, but rather was "designed to compensate the class counsel for the non-monetary benefits they achieved for the class" and upholding claims-made settlement that gave class members opportunity to resubmit warranty claims to the defendants through a procedure with enhanced consumer protections).

Therefore, "[w]hen determining the total value of a class action settlement for purposes of calculating the attorneys' fee award, courts usually consider not only the compensatory relief, but also the economic value of any prospective injunctive relief obtained for the class." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. Feb. 16, 2007); *see also In re: Checking Account Overdraft Litig.*, 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190560, 2013 WL 11319391, at *13 (S.D. Fla. Aug. 5, 2013) ("When using the percentage-of-the-fund approach, courts compensate class counsel for their work in extracting non-cash relief from the defendant in a variety of ways. When the non-cash relief can be reliably valued, courts often include the value of this relief in the common fund and award class counsel a percentage of the total fund."); *LiPuma v. American Express Co*., 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (When valuing the total recovery obtained, court included cash fund, proposed value of injunctive relief, and costs of notice and administration).

### D.  The Skill, Experience, Reputation and Ability of Class Counsel

The remaining *Johnson* factors – the skill required to perform the legal services properly and the experience, reputation, ability of the attorneys, and the nature of the professional relationship with the clients – confirm that the fees sought are reasonable.  Class Counsel achieved a settlement that confers substantial benefits to the Settlement Class Members despite the hard-fought litigation against sophisticated and well-financed Defendants represented by top-tier counsel. *See In re Sunbeam Sec. Litig.,* 176 F. Supp.2d at 1334 ("In assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced.").

This outstanding result was made possible by Class Counsel's extensive experience litigating class actions of similar size, scope, and complexity like the instant Action. This litigation required a high degree of skill and experience given the complexity of the issues. Class Counsel employed their significant experience gained from litigating numerous class actions across the country, in both state and federal courts. Thus, this factor supports awarding the requested fee.

## IV.    THE INCENTIVE AWARD IS APPROPRIATE

Finally, Class Counsel respectfully request that the Court award an Incentive Service Award $6,000 to each of the Class Representatives which is separate from the estimated value of benefits available to the Settlement Class and is customary and well-supported by Eleventh Circuit precedent. Such an award is routinely approved by Courts in order to compensate named plaintiffs for their work on behalf of the class; to account for financial, personal, or reputational risks associated with litigation; and to encourage plaintiffs to step forward on behalf of unnamed class members in the future. *See Pinto*, 513 F. Supp. 2d at 1344 (approving service awards of $7,500.00 for each class representative, and noting that "[in instituting this litigation, the Representative Plaintiffs have acted as private attorneys general seeking a remedy for what appeared to be a public

wrong. It is well recognized that private class action suits are a primary weapon in the enforcement of laws designed for the protection of the public.")  In this Action, each Class Representative devoted substantial time from their practices in order to confer with Class Counsel, to advise on PIP billing procedures followed in their practices, to assist in conducting in-person meetings and telephone conference calls, to participate at the scheduled mediation sessions, and confer during months-long settlement negotiations. Thus, approval of the requested Incentive Award is warranted.

## V.     CONCLUSION

WHEREFORE, based upon the foregoing reasons, Class Counsel respectfully request that the Court enter an Order (i) awarding attorneys' fees and expenses to Class Counsel in the amount of $2,503,116.26 ; (ii) granting reimbursement of litigation expenses in the amount of $28,883.74; and (iii) awarding Incentive Awards of $6,000 to each of the Class Representatives.


DATED:  May 22, 2020                    By:*/s/ Tod Aronovitz*
                                         Tod Aronovitz (FBN 186430)
                                         Barbara Perez (FBN 989304)
                                         ARONOVITZ LAW
                                         Town Center One, Suite 2201
                                         8950 SW 794 Court
                                         Miami, FL 33156
                                         Tel: 305-372-2772
                                         Fax: 305-397-1886
                                         ta@aronovitzlaw.com
                                         bp@aronovitzlaw.com

                                         Theophilos Poulopoulos (FBN 98070)
                                         THE SCHILLER KESSLER GROUP
                                         7501 W. Oakland Park Boulevard
                                         Suite 201
                                         Ft. Lauderdale, FL 33319
                                         Tel: 954-933-3000
                                         Fax: 954-667-5805
                                         theo@injuredinflorida.com

Joel S. Perwin (FBN 316814)
JOEL S. PERWIN, P.A.
1680 Michigan Avenue, Suite 700
Miami Beach, FL 33139
Tel: 305-779-6090
Fax: 305-779-6095
jperwin@perwinlaw.com
sbigelow@perwinlaw.com

Alaina Fotiu-Wojtowicz (FBN 84179)
Joshua Truppman (FBN 111795)
BRODSKY FOTIU-WOJTOWICZ, PLLC
200 S.E. First Street, Suite 400
Miami, FL 33131
Tel: 305-503-5054
Fax: 305-677-5089
alaina@bfwlegal.com
joshua@bfwlegal.com
docketing@bfwlegal.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 22, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send Notices of Electronic Filing to the counsel of record on the attached Service List.

*/s/ Tod Aronovitz*

<u>**SERVICE LIST**</u>
**GREGORY HASKIN CHIROPRACTIC CLINICS, INC., et. al., vs.**
**GEICO INDEMNITY COMPANY, et al.**
<u>**Case No.:  17-Civ-62462-ALTONAGA**</u>

**Attorneys for Plaintiffs**:

Tod Aronovitz (FBN 186430)
Barbara Perez (FBN 989304)
ARONOVITZ LAW
Town Center One, Suite 2201
8950 SW 794 Court
Miami, FL 33156
Tel: 305-372-2772
Fax: 305-397-1886
ta@aronovitzlaw.com
bp@aronovitzlaw.com

Theophilos Poulopoulos (FBN 98070)
THE SCHILLER KESSLER GROUP
7501 W. Oakland Park Boulevard
Suite 201
Ft. Lauderdale, FL 33319
Tel: 954-933-3000
Fax: 954-667-5805
theo@injuredinflorida.com

Joel S. Perwin (FBN 316814)
JOEL S. PERWIN, P.A.
1680 Michigan Avenue, Suite 700
Miami Beach, FL 33139
Tel: 305-779-6090
Fax: 305-779-6095
jperwin@perwinlaw.com
sbigelow@perwinlaw.com

Alaina Fotiu-Wojtowicz (FBN 84179)
Joshua Truppman (FBN 111795)
BRODSKY FOTIU-WOJTOWICZ, PLLC
200 S.E. First Street, Suite 400
Miami, FL 33131
Tel: 305-503-5054
Fax: 305-677-5089
alaina@bfwlegal.com
joshua@bfwlegal.com
docketing@bfwlegal.com

**Attorneys for Defendants**:

John P. Marino (FBN 814539)
Lindsey R. Trowell (FBN 678783)
Kristen L. Wenger (FBN 92136)
SMITH, GAMBRELL & RUSSELL, LLP
50 North Laura Street
Suite 2600
Jacksonville, Florida 32202
Tel: 904-598-6100
Fax: 904-598-6204
jmarino@sgrlaw.com
kwenger@sgrlaw.com
ltrowell@sgrlaw.com